UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                                                                   :

In re Application of BNP Paribas Jersey Trust     :
Corporation Ltd for an Order Pursuant to         :         Case No. 18-mc- ____
28 U.S.C. § 1782 to Conduct Discovery for    :
Use in Foreign Proceedings                                  :
                                                                                                :
                                                                                                :
------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF BNP PARIBAS JERSEY TRUST CORPORATION LTD'S *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

ALLEN & OVERY LLP

Jacob S. Pultman
Bradley S. Pensyl
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300

*Attorneys for Applicant BNP Paribas Jersey Trust Corporation Ltd*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

    A.    Background Regarding the Jersey Action ........................................................ 4

    B.    The Jersey Freezing Order Issued In Applicant's Favor Against
        Edoarda Based on Edoarda's Extensive History of Deceitful Conduct ........... 4

    C.    The Judgment in Favor of Cristiana on Her Breach of Trust Claims
        and in Favor of BNP on its Third Party Claim for Indemnification,
        and the Continuation of the Jersey Freezing Order ......................................... 6

    D.    The Related Foreign Proceedings .................................................................... 6

    E.    The Section 1782 Application for Information from Huntington .................... 7

    F.    The Need for Information from Gurr Johns ..................................................... 8

ARGUMENT .......................................................................................................................... 9

I.    THE APPLICATION MEETS SECTION 1782'S STATUTORY PREREQUISITES .............. 9

II.    ALL OF THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF
      GRANTING THE APPLICATION .......................................................................... 12

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Application of 000 Promneftstroy for an Order to Conduct Discovery for use in a Foreign Proceeding,*
134 F. Supp. 3d 789 (S.D.N.Y. 2015) ................................................................................... 12

*Asia Maritime Pacific Ltd.,*
253 F. Supp. 3d 701 (S.D.N.Y. 2015) ................................................................................... 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*
(2d Cir. 2012) ........................................................................................................................ 10

*Euromepa S.A. v. R. Esmerian, Inc.,*
51 F.3d 1095 (2d Cir. 1995) ............................................................................................ 12, 14

*Gushlak v. Gushlak,*
486 F. App'x 215 (2d Cir. 2012) ........................................................................................... 12

*In re Application of Esses,*
101 F.3d 873 (2d Cir. 1996) .................................................................................................. 11

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................ 13

*In re Application of Gorsoan Ltd. & Gazprombank OJSC,*
No. 13 Misc. 397(PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) ......................... 10, 13

*In re Application of Sveaas,*
249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................................................. 10

*In re Clerici,*
481 F.3d 1324 (11th Cir. 2007) ............................................................................................. 11

*In re Veiga,*
746 F. Supp. 2d 8 (D.D.C. 2010) ..................................................................................... 10, 13

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004) ......................................................................................................... 10, 13

*Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.,*
No. 14 Civ. 9997 (CM), 2015 WL 3439220 (S.D.N.Y. Jan. 6, 2015) ................................... 11

Applicant BNP Paribas Jersey Trust Corporation Ltd (together with affiliated entities, "BNP" or the "Applicant") respectfully submits this memorandum of law in support of its *ex parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings (the "Application").[1]

## PRELIMINARY STATEMENT

This Application seeks limited and specific discovery from a company based in this jurisdiction, Gurr Johns, Inc. ("Gurr Johns"), regarding a valuable collection of art—including an original Gauguin painting, an original Cézanne painting, and an original Van Gogh painting—that is worth tens of millions of dollars (the "Crociani Art Collection"). The Crociani Art Collection is in issue in multiple foreign proceedings pending between BNP and the owner of the artwork, Edoarda Crociani ("Edoarda"), a wealthy former client of BNP, including an action in the Royal Court of Jersey (the "Royal Court"), File No. 2013/2004 (the "Jersey Action"), which entered both a judgment (the "Judgment") and a worldwide asset freezing and disclosure order (the "Jersey Freezing Order") in BNP's favor against Edoarda in September 2017. The Jersey Freezing Order, entered originally as a pre-judgment asset freeze in August 2016 and then extended post-judgment by the Royal Court, bars Edoarda from disposing, dealing with or diminishing the value of any of her assets worldwide up to $149 million, and enumerates a number of specific assets that are subject to restriction and may not be transferred, including the Crociani Art Collection. The Jersey Freezing Order also requires Edoarda to disclose information regarding the location of her assets, including, specifically, the Crociani Art Collection.

---

[1] Petitioners have also filed herewith, in support of the Application: (i) a proposed order with a proposed subpoena (the "Subpoena") attached thereto; (ii) the Declaration of Jacob S. Pultman (the "Pultman Decl.") dated February 8, 2018, and the exhibits appended thereto; and (iii) the Declaration of Brandon D. O'Neil (the "O'Neil Decl.") dated February 8, 2018.

Edoarda has refused to pay the Judgment, may have sold paintings in the Crociani Art Collection in violation of the Jersey Freezing Order, and has refused to provide BNP with the asset disclosure ordered by the Royal Court. Edoarda's conduct—which is consistent with her extensive history of shielding assets from creditors and evading her legal obligations—has forced BNP to commence multiple additional foreign proceedings against Edoarda since the Judgment and the Jersey Freezing Order were entered. This includes foreign proceedings in courts in Belgium, France, Italy, Luxembourg, Monaco, Singapore, and Switzerland, as well as additional proceedings in other foreign jurisdictions that BNP will bring against Edoarda. The information sought in this Application bears upon the Jersey Action and the additional foreign proceedings that BNP has brought.

This is BNP's second Section 1782 application for discovery regarding the Crociani Art Collection. BNP's first application, which sought information relating to the Crociani Art Collection from Huntington T. Block Insurance Agency, Inc. ("Huntington") as well as a broader range of discovery relating to Edoarda's assets, was granted by the United States District Court for the District of Columbia (the "DC District Court") on October 13, 2017. Huntington produced documents showing the location of the Crociani Art Collection as of November 2016. However, Huntington was unable to provide information beyond that date because, as reflected in Huntington's production, Huntington was notified in December 2016 that Edoarda had purportedly "sold" the Crociani Art Collection (which, if true, would be a direct violation of the Jersey Freezing Order), and therefore was cancelling her insurance policies.

This Application seeks Gurr Johns' help in providing information regarding the artwork after November 25, 2016, in order to determine where the art is currently located and whether any of the pieces of art have been transferred in violation of the Jersey Freezing Order.

2

BNP recently learned that Gurr Johns may have current information relating to the Crociani Art Collection. Such information also bears on pending valuation proceedings in the Jersey Action. While Gurr Johns has indicated it would not supply this information in the absence of a subpoena, Gurr Johns has advised BNP that it would comply with a subpoena for the information.

This is a textbook case for the authorization of Section 1782 discovery. The information sought bears upon multiple pending foreign proceedings. The requested discovery is limited to one document request over a fifteen month period of time—documents in Gurr John's possession relating to the Crociani Art Collection from November 2016 to the present. The Royal Court has ordered Edoarda to provide the same information sought in this Application, but Edoarda has refused to comply. Thus, the Royal Court would clearly welcome the information, and there is every indication that the courts in the other relevant foreign jurisdictions would similarly be receptive to the evidence.

Furthermore, another federal court, the DC District Court, already granted a substantially similar, although broader, application in October 2017. This more limited Application, like the one granted by the DC District Court, meets all of the requirements for Section 1782 discovery, and all of the discretionary factors that courts consider in determining Section 1782 applications weigh decisively in favor of permitting the requested discovery. As such, the Applicant respectfully requests that the Court grant this Application and authorize the Applicant to serve the Subpoena submitted herewith on Gurr Johns.

### STATEMENT OF FACTS

A.  **Background Regarding the Jersey Action**

The Jersey Action arises out of a family trust dispute between Edoarda and her daughter, Cristiana Crociani ("Cristiana" or the "Plaintiff"). Cristiana commenced the action in

2013, claiming that Edoarda wrongfully diverted approximately $120 million worth of assets out of a trust (the "Grand Trust") established for the benefit of Cristiana and her sister Camilla Crociani ("Camilla"). Redgrave Decl. ¶ 9. Specifically, in February 2010, a valuable art collection (which included some but not all of the paintings in the Crociani Art Collection) and an investment portfolio were transferred out of the Grand Trust and into a separate trust (the "Fortunate Trust") at Edoarda's direction. *Id.* ¶¶ 15–17. Then, in June 2011, the Fortunate Trust was revoked upon the instructions of Edoarda in the wake of a breakdown in her relationship with Cristiana. *Id.* ¶ 17. Edoarda liquidated the trust portfolio and diverted the assets to various offshore structures that she owned or controlled, and into accounts that she controlled. *Id.*

In addition to her claims against Edoarda, Cristiana also brought a breach of trust claim against BNP in its capacity as one of the trustees of the Grand Trust and the Fortunate Trust. *Id.* ¶¶ 10. In turn, BNP brought a third-party claim against Edoarda in the Jersey Action under two contractual indemnities (the "Indemnities") that Edoarda issued to BNP in 2010 and 2011. *Id.* ¶ 11. Together, these two indemnities contractually obligate Edoarda to indemnify BNP for any and all liabilities and losses it incurs in connection with the Jersey Action. *Id.* ¶¶ 19–22.

### B. The Jersey Freezing Order Issued In Applicant's Favor Against Edoarda Based on Edoarda's Extensive History of Deceitful Conduct

In early August 2016, BNP submitted an application to the Royal Court for a prejudgment worldwide asset freeze and disclosure order against Edoarda. Redgrave Decl. ¶ 23. In support of this request, BNP submitted substantial evidence demonstrating the need for such relief from the Royal Court, including a detailed factual account of Edoarda's course of conduct in using sophisticated offshore structures to shield her assets from creditors and her history of

4

refusing to comply with the Royal Court's orders throughout the course of the litigation. *Id.* ¶¶ 23–24.

Edoarda inherited her substantial wealth in 1980 upon the death of her husband Camillo Crociani, who in 1979 was convicted *in absentia* in Italy on fraud charges in relation to a bribery scandal. Redgrave Decl. ¶ 27. Since that time, Edoarda has repeatedly moved her assets through a complex web of offshore trust and company structures to evade her creditors. *Id.* ¶¶ 27–28. For example, after revoking and liquidating the Fortunate Trust in June 2011, Edoarda transferred the proceeds between various entities and structures that she created in an effort to remove them from Cristiana's reach. *Id.* ¶ 28.

To protect BNP's rights under the Indemnities, the Royal Court entered the Jersey Freezing Order barring Edoarda from transferring or diminishing the value of any of her assets worldwide up to $194 million (as noted above, under the order continuing the asset freeze post-trial, the amount of assets currently frozen in the Jersey Freezing Order is now $149 million). *Id.* ¶¶ 5, 7, 30, 35. The order also identifies a number of specific assets that are subject to restriction and may not be transferred, including the artwork that is the subject of this application. *Id.* ¶ 30.

In addition to freezing Edoarda's assets, the Royal Court also ordered Edoarda to disclose the "value, location and details" of "all her assets in the Island of Jersey or elsewhere exceeding £10,000 in value whether such are held in her own name or not and whether such are solely or jointly owned." *Id.* Edoarda has never provided any of this required disclosure. *Id.* ¶ 31.

    **C.**    **The Judgment in Favor of Cristiana on Her Breach of Trust Claims and in Favor of BNP on its Third Party Claim for Indemnification, and the Continuation of the Jersey Freezing Order**

On September 11, 2017, the Royal Court entered the Judgment in favor of Cristiana on her breach of trust claims against Edoarda and BNP. Redgrave Decl. ¶ 33. The

5

Court ruled that Edoarda and BNP are jointly and severally liable to reconstitute the trust, or to provide equitable compensation to the Plaintiff for the current value of the trust assets. *Id.* The total sum that must be paid is still subject to further proceedings, but the Royal Court ordered BNP and Edoarda jointly to make an initial $100 million payment to the new trustee of the Grand Trust (however, the payment of approximately half of this total has been stayed pending appeal). *Id.* ¶ 12. The further proceedings currently underway in Jersey include an inquiry to value eight works of art from the Crociani Art Collection that were previously assets of the Grand Trust.

Separately, the Court also ruled in favor of BNP on its third party claim against Edoarda. *Id.* ¶ 34. Specifically, the Court held that Edoarda is obligated to indemnify BNP for the full amount of its liability to Cristiana as well as for any other losses sustained by BNP in the Jersey Action, including all legal, expert and professional expenses incurred in defending the Jersey Action as well as in pursuing its rights under its indemnities. *Id.* In addition, the Royal Court continued and made permanent the Jersey Freezing Order against Edoarda.

### D. **The Related Foreign Proceedings**

Since the Judgment was entered, BNP has commenced numerous proceedings in different foreign jurisdictions in an effort to enforce the Judgment. This includes exequatur and attachment proceedings in France, Milan, Singapore (where the court has entered a Mareva injunction), Belgium, Luxembourg and Monaco, as well as proceedings against a third party storage company that previously stored some of the Crociani Art Collection in Switzerland. O'Neil Decl. ¶¶ 4–6. In addition, BNP has retained counsel to pursue similar actions in other foreign jurisdictions. *Id.*

### E. The Section 1782 Application for Information from Huntington

On October 5, 2017, BNP filed its *ex parte* application under 28 U.S.C. § 1782 in the DC District Court. Pultman Decl. ¶ 6. That application sought authorization to serve a subpoena on Huntington for documents from 2011 through the date of the application relating to the Crociani Art Collection and any other assets held by Edoarda that were insured by Huntington, as well as a 30(b)(6) deposition relating to such assets. *Id.* The DC District Court entered an order granting the application in full on October 13, 2017, and BNP served its subpoena on Huntington on October 19, 2017. *Id.* ¶ 6; Ex. 2.

Having not received any responsive documents from Huntington despite repeated efforts to obtain the discovery without further involvement of the court, BNP filed a motion to compel Huntington's compliance with the subpoena. Pultman Decl. ¶ 7. On February 1, 2018, the DC District Court granted BNP's motion in full, entering an order compelling Huntington to produce all responsive materials by February 12, 2018, to designate a witness for a 30(b)(6) deposition by February 19, 2018, and to pay the costs and fees incurred by BNP in making the motion. *Id.* Ex. 3.

Huntington has now produced 4,391 pages of documents, and has represented that its document production is complete. Pultman Decl. ¶ 8. The documents produced by Huntington include two insurance policies issued on December 23, 2015 that cover the Crociani Art Collection for the period December 28, 2015 to December 28, 2016, as well as a coverage change endorsement dated November 25, 2016. *Id.* Ex. 4–7. One of these policies was issued to Edoarda as the named insured and covers 21 of the paintings in the Crociani Art Collection. *Id.* Ex. 4. As set forth in the policy, these pieces of art were located in three locations as of that time: (i) a private residence owned by the Crociani family in Monte Carlo; (ii) a private residence owned by the Crociani family in Rome; and (iii) Christie's Storage in the Singapore

7

Freeport. *Id.* The second policy lists Camilla as the named insured and covers six of the paintings in the Crociani Art Collection. *Id.* Ex. 5. The policy reflects that, as of that time, those six paintings were located in two locations: (i) Geneva, Switzerland and (ii) Christie's Storage in the Singapore Freeport. *Id.*

Huntington's document production also reflected that, in December 2016, Edoarda canceled the insurance policies, and—in direct violation of the Jersey Freezing Order—purportedly transferred the Crociani Art Collection. Specifically, on December 22, 2016, Edoarda wrote to Huntington that "given some changes in our overall organization, we wish to suspend globally and terminate the insurance of all items currently under your insurance." Pultman Decl. Ex. 8. Edoarda went on to say that "I do not have [the items under insurance] anymore." *Id.* A representative from Huntington forwarded this email to a colleague and stated, "[j]ust found out she has sold them so not much we can do." *Id.* Ex. 9. Due to Edoarda's cancellation of the policies, Huntington was unable to provide information regarding the artwork beyond the coverage change endorsements issued on November 25, 2016.

F.  **The Need for Information from Gurr Johns**

BNP has retained Gurr Johns' UK affiliate in connection with the ongoing valuation proceedings in the Royal Court with respect to the eight works from the Crociani Art Collection that previously were assets of the Grand Trust. O'Neil Decl. ¶8. Recently, BNP learned that Gurr Johns may have information concerning the Crociani Art Collection. On January 31, 2018, BNP's counsel discussed the issue by telephone with counsel for Gurr Johns, who indicated that his client does have information regarding the Crociani Art Collection, but that Gurr Johns would not provide this information in the absence of a subpoena or court order. Pultman Decl. ¶¶ 3–4. Counsel for Gurr Johns sent a follow-up email later that same day confirming his client's position that a subpoena would be required in order for BNP to obtain the

8

information from Gurr Johns. *Id.* Ex. 1. As such, BNP has filed this Section 1782 proceeding seeking the information that Gurr Johns has concerning the Crociani Art Collection.

Given that BNP obtained information regarding the art from Huntington as of November 25, 2016, this Application is limited to seeking documents from Gurr Johns after this date. This information is needed to assist BNP in a number of ways. Importantly, if BNP was able to find and recover the eight works of art that previously were assets of the Grand Trust, it would significantly reduce BNP's further liability in the ongoing proceedings in the Royal Court because it would likely no longer be required to pay compensation with respect to those works of art. O'Neil Decl. ¶ 9. In addition, the information from Gurr Johns would assist BNP in determining whether the Royal Court's asset freeze order has in fact been violated by Edoarda, and also help BNP in pursuing its claims in the related foreign proceedings it has brought. *Id.* ¶ 6.

## ARGUMENT

### I. THE APPLICATION MEETS SECTION 1782'S STATUTORY PREREQUISITES

Section 1782 provides in pertinent part that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person . . . ." 28 U.S.C. § 1782(a). There are three requirements to obtain discovery pursuant to Section 1782:

> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) the discovery is for use in a foreign proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citation omitted). These prerequisites are plainly satisfied here.

First, Gurr Johns resides and is found within this district because its principal place of business is New York. As such, the first statutory requirement is satisfied because Gurr Johns both "resides" and "is found" within this District. *See In re Application of Gorsoan Ltd. & Gazprombank OJSC,* No. 13 Misc. 397(PGG), 2014 WL 7232262, at *5 (S.D.N.Y. Dec. 10, 2014) (finding this requirement satisfied where "Defendant RIGroup LLC has its principal place of business in New York, New York").

Second, the Application satisfies the second statutory prerequisite because the discovery sought is "for use in a proceeding before a foreign or international tribunal." The courts have consistently held that the burden imposed upon an applicant in meeting this requirement is *de minimis*. *See, e.g., In re Veiga*, 746 F. Supp. 2d 8, 17 (D.D.C. 2010) ("[T]he burden imposed upon an applicant is *de minimis*."); *In re Application of Sveaas*, 249 F.R.D. 96, 106–07 (S.D.N.Y. 2008) (noting that the courts apply a "broadly permissive" standard in determining whether the information is relevant to a foreign proceeding). This "liberal standard" is satisfied so long as the discovery sought "has some reasonable bearing upon" a pending foreign proceeding or a foreign proceeding that is within the "reasonable contemplation" of the Applicant. *Veiga*, 746 F. Supp. 2d at 19, 21, 23 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004)).

The Applicant has clearly met this low bar here because the information sought is relevant to multiple foreign proceedings. First, the discovery bears directly on the ongoing valuation proceedings in the Royal Court as well as on the Jersey Freezing Order. *See In re Application of Gorsoan*, 2014 WL 7232262, at *1, *5 (holding that Section 1782 may be used to obtain asset discovery regarding the location and details of assets that are subject to a foreign court's asset freeze order). The fact that the Royal Court ordered Edoarda to produce the very

discovery that Applicant seeks here underscores the importance of this information. The evidence may show whether additional measures should be taken to restrain Edoarda's assets or whether Edoarda should be held in contempt of the Jersey Freezing Order. Redgrave Decl. ¶ 43.

Furthermore, the discovery sought here is needed to aid the Applicant in enforcing the Judgment in the Royal Court and the other foreign tribunals where BNP has commenced—and will commence—actions against Edoarda.[2] The evidence relating to the location of the artwork at issue here is essential to BNP's ability to locate, attach and execute upon such assets to obtain satisfaction of the Judgment it holds against Edoarda.

Third, the final statutory requirement—that the application be "made by an interested person"—is met here. The Applicant is clearly an "interested person" within the meaning of the governing test, because the Applicant is a party to the Jersey Action and all of the other foreign proceedings that have been brought and that will be brought. *See In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (holding that a party to a foreign proceeding is an "interested person" for purposes of the governing Section 1782 analysis).

Lastly, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because [it] can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir.

---

[2] There is conflicting authority as to whether Section 1782 discovery is available for judgment enforcement proceedings. *Compare Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, No. 14 Civ. 9997 (CM), 2015 WL 3439220, at *3–7 (S.D.N.Y. Jan. 6, 2015) (denying application seeking discovery for use in pre-judgment attachment proceedings); and *Asia Maritime Pacific Ltd.*, 253 F. Supp. 3d 701, 705–08 (S.D.N.Y. 2015) (similar) *with In re Clerici,* 481 F.3d 1324, 1332–33 (11th Cir. 2007) (holding that Section 1782 can be invoked to obtain asset discovery for use in pre-judgment attachment and post-judgment enforcement proceedings in foreign jurisdictions). However, the Court need not resolve this apparent conflict here, because, as noted above, the discovery also bears on the asset freeze order and the valuation proceedings in the Jersey Action, which clearly provide a proper basis for Section 1782 discovery.

2012) (collecting cases). Upon the granting of the Application, the Applicant will promptly serve the Subpoena and Gurr Johns will have ample opportunity to object and be heard.

In sum, Applicant plainly satisfies all of the requirements to obtain the requested discovery under the governing test for Section 1782 discovery applications. As such, the Court has the authority to grant the Application.

## II. ALL OF THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING THE APPLICATION

After determining that the three statutory requirements are satisfied, courts then consider four discretionary factors in deciding whether to grant a 1782 application:

1. Whether the person from whom discovery is sought is a participant in the foreign proceeding;
2. The nature of the foreign tribunal and the character of the proceedings;
3. Whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and
4. Whether the discovery sought is unduly intrusive or burdensome.

*In re Application of 000 Promneftstroy for an Order to Conduct Discovery for use in a Foreign Proceeding*, 134 F. Supp. 3d 789, 791 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). The Second Circuit has instructed the courts in this district to perform this analysis "in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995) (internal quotation marks and citation omitted). As all four of these factors weigh conclusively in favor of granting the Application, the Court should exercise its discretion to authorize the requested discovery.

First, Gurr Johns is not a party in the Jersey Action or in any of the other associated enforcement proceedings. Thus, Gurr Johns "may be outside the foreign tribunal's

jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *See Intel Corp.*, 542 U.S. at 264. Moreover, given Edoarda's continuing refusal to comply with the Royal Court's disclosure orders, the exercise of this Court's power to authorize Section 1782 discovery is necessary to enable discovery of the evidence sought in this Application. *See In re Application of Gorsoan*, 2014 WL 7232262 at *6 (authorizing Section 1782 discovery and emphasizing that, "[g]iven [respondent's] failure to comply with the Cyprus Court's [freezing and disclosure] Order, exercise of this Court's power under Section 1782 may be necessary to enable discovery of the documents") (internal quotations omitted). Accordingly, the first factor of the analysis weighs in favor of granting the Application.

The second discretionary factor—the "nature of the foreign tribunal and the character of the proceedings"—focuses on whether the foreign tribunal would be "generally receptive to federal court assistance under § 1782(a)." *See Veiga*, 746 F. Supp. 2d at 24. The fact that the Royal Court, in the Jersey Freezing Order, ordered Edoarda to provide the precise information requested in this Application—and has never suggested that it would reject the information if sought through other jurisdictions—demonstrates that the Royal Court would be receptive to this evidence. *See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (holding that this factor weighs in favor of permitting 1782 discovery absent "authoritative proof" that the foreign tribunal would reject the discovery sought). Thus, the second factor of the analysis weighs in favor of authorizing the requested discovery.

Similarly, the third factor of the analysis also weighs in favor of granting the Application because the Applicant is not attempting to circumvent foreign proof-gathering restrictions. *See Euromepa S.A.*, 51 F.3d at 1100 (holding that courts should liberally grant 1782

discovery in the absence of specific "judicial, executive or legislative declarations" rejecting the use of such evidence). To the contrary, the Applicant has attempted to obtain the requested information directly from Edoarda in the Jersey Action itself—and even obtained an order from the Royal Court compelling Edoarda to produce the information—but the Applicant's discovery efforts in the Jersey Action have been thwarted by Edoarda's refusal to comply.

Finally, the Applicant has limited its Subpoena to *one* discovery request for documents over a fifteen month period of time. Specifically, the Applicant seeks only documents regarding the specifically identified set of paintings in the Crociani Art Collection, information that is in Gurr Johns' possession. The Subpoena is tailored to the period from November 25, 2016 to the present, as November 25, 2016 is the last date that Applicant can account for the location of the artwork based on the documents obtained from Huntington.

Because each of the discretionary factors weighs in favor of granting the Application, the Court should exercise its discretion to grant the Application with leave to serve the Subpoena.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant the Application and enter the Proposed Order granting leave to serve the Subpoena submitted in connection with the Application.

Dated: New York, NY　　　　　　　　　　Respectfully submitted,
　　　　　February 8, 2018

　　　　　　　　　　　　　　　　　　　　　 /s/ Jacob S. Pultman

　　　　　　　　　　　　　　　　　　　　Jacob S. Pultman
　　　　　　　　　　　　　　　　　　　　Bradley S. Pensyl
　　　　　　　　　　　　　　　　　　　　**ALLEN & OVERY LLP**
　　　　　　　　　　　　　　　　　　　　1221 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　New York, New York 10020
　　　　　　　　　　　　　　　　　　　　Tel: 212-610-6300

　　　　　　　　　　　　　　　　　　　　*Attorneys for Applicant BNP Paribas Jersey Trust Corporation Ltd*